## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Greenpond South, LLC, | Case No. 14-cv-1214 (SRN/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| General Electric Capital Corporation, | |
| Defendant. | |

Benjamin I. Finestone and David Elsberg, Quinn Emanuel Urquhart & Sullivan LLP, 51 Madison Avenue, New York, NY 10010; and Timothy D. Kelly, Dykema Gossett, PLLC, 4000 Wells Fargo Center, 90 South 7th Street, Minneapolis, MN 55402, for Plaintiff.

Alicia C. Davis, and Sean M. Berkowitz, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611; Christopher W. Madel and Damien A. Riehl, Robins, Kaplan, Miller & Ciresi LLP, 800 LaSalle Ave, Suite 2800, Minneapolis, MN 55402; Robert Malionek, Roger G. Schwartz, Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.     INTRODUCTION

This matter is before the Court on the following motions: (1) Plaintiff's Motion to Remand [Doc. No. 24]; and (2) Defendant's Motion to Transfer Venue [Doc. No. 3]. Because the Court must consider jurisdictional issues first, see Transamerica Fin. Life Ins. v. Merrill Lynch & Co., 302 B.R. 620, 624 (N.D. Iowa 2003), the Court begins by addressing Plaintiff's Motion to Remand.  See also AUSA Life Ins. Co. v. Citigroup,

Inc., 293 B.R. 471, 474 (N.D. Iowa 2003) (holding that "in accord with the majority view that jurisdictional issues should be considered first, [the court] will consider plaintiffs' motion for remand before considering defendants' transfer motion."). For the reasons set forth below, the Court grants Plaintiff's Motion to Remand, and denies Defendants' Motion to Transfer, as moot.

## II.   BACKGROUND

### A. Petters' Ponzi Scheme

This case arises from financial losses associated with dealings with Thomas J. Petters ("Petters"). Petters "and his affiliates engaged in a 13-year Ponzi scheme premised on the fictitious purchase and sale of electronics merchandise." (See Pl.'s Mem. at 4 [Doc. No. 26] (citing Notice of Removal, Ex. A, "Compl." ¶ 2 [Doc. No. 1-1]).) Petters solicited capital in exchange for attractive interest rates, purportedly enabling him and his entities to purchase electronics merchandise at liquidation prices. (Id. (citing Compl. ¶ 17 [Doc. No. 1-1]).) Among others, Petters' entities included: Petters Company, Inc. ("PCI"); PAC Funding, LLC ("PAC"); Petters Group Worldwide ("PGW"); Petters Capital, Inc. ("Petters Capital"); and RedtagBiz, Inc., f/k/a Tom's Cyber Warehouse, Inc., f/k/a redtagoutlet.com, inc. ("Red Tag"). (See Compl. ¶ 19 [Doc. No. 1-1].) Petters' business operated as a Ponzi scheme, as earlier lenders were repaid with funds lent by later victims. (Id. ¶¶ 16, 18.) As a result of Petters' scheme, investor losses totaled to approximately three to four billion dollars. (Id. ¶ 18.)

On October 11, 2009, PCI and its affiliated debtors filed for title 11 bankruptcy protection in the United States Bankruptcy Court for the District of Minnesota, Case No.

08-cv-45257 [hereinafter, "Petters Bankruptcy"].  (Id. ¶ 19.)  Palm Beach Finance

Partners, L.P. and Palm Beach Finance II, L.P. (collectively, "Palm Beach Debtors")

were among the largest investors in Petters' Ponzi scheme.  They also commenced title

11 bankruptcy proceedings in late 2009, but did so in United States Bankruptcy Court for

the Southern District of Florida [hereinafter, "Palm Beach Bankruptcy"].  (See Notice of

Removal, Ex. B "Order Granting in-part and Denying in-part GECC's Motion to

Dismiss" at 6 [Doc. No. 1-1].)  In 2010, the Florida Bankruptcy Court confirmed a

chapter 11 plan, pursuant title 11 of the Bankruptcy Code, and established a liquidation

trust for the Palm Beach Bankruptcy.  See In re Palm Beach Fin. Partners, L.P., Case No.

09-36379 (BKC/PGH), "Order Confirming Second Amended Joint Plan Of Liquidation"

(Bankr. S.D. Fla. Oct. 21, 2010).  Paragraph 34 of the Florida Bankruptcy Court's order

states that additional proceedings may be instituted "in the Court to remedy any defect or

omission or reconcile any inconsistencies in the Plan . . . so long as such proceedings do

not materially and adversely affect the treatment of holders of Claims under the Plan."

See In re Palm Beach Fin. Partners, L.P., Case No. 09-36379 (BKC/PGH), "Order

Confirming Second Amended Joint Plan Of Liquidation" ¶ 34 (Bankr. S.D. Fla. Oct. 21,

2010).

On September 29, 2012, Barry Mukamal ("Mukamal" or "the Trustee"), in his

capacity as liquidating trustee of the Palm Beach Debtors, filed an adversary proceeding

against General Electric Capital Corporation ("GECC"), alleging that GECC was liable

for fraud, negligent misrepresentation, aiding and abetting fraud, and conspiracy to

commit fraud [hereinafter, "Palm Beach Litigation"].  See In re Palm Beach Fin.

Partners, L.P., Case No. 12-01979-PGH (Bankr. S.D. Fla. Sept. 29, 2012).  GECC filed a

motion to dismiss all of the Trustee's claims.  On August 23, 2013, the Florida

Bankruptcy Court granted GECC's motion on all counts, except for the Trustee's

conspiracy to commit fraud claim.  (See Notice of Removal, Ex. B "Order Granting in-

part and Denying in-part GECC's Motion to Dismiss" [Doc. No. 1-1].)  The discovery

deadline passed on December 18, 2014, and Judge Paul G. Hyman, Jr., has scheduled a

pretrial conference to take place between the parties on March 3, 2015.  (See id., Ex. C

"Order filed on March 28, 2014" at 2 [Doc. No. 1-1].)

### B.  The Parties

Plaintiff Greenpond South, LLC ("Plaintiff" or "Greenpond") is a limited liability

corporation organized under the laws of the State of Delaware.  (See Compl. ¶ 11 [Doc.

No. 1-1].)  Greenpond is a successor-in-interest to several funds, including Acorn Capital

Group, LLC ("Acorn").  (See Pl.'s Mem. at 6 n.2 [Doc. No. 26].)  Plaintiff's successor-

in-interest status for the funds applies to all the funds' claims, which are related to

Petters-related losses, including Acorn's bankruptcy claim in the Petters Bankruptcy.

(Id.)

Defendant GECC ("Defendant" or "GECC") is a corporation also organized under

the laws of the state of Delaware.  (See Compl. ¶ 12 [Doc. No. 1-1].)  GECC's principal

place of business is 901 Main Avenue, Norwalk, Connecticut 06851.  (Id.)

### C.  GECC's Alleged Role in Petters' Ponzi Scheme

Plaintiff alleges that GECC provided Petters' affiliates with one of their first

significant sources of funds.  (Id. ¶ 3.)  Plaintiff claims that although GECC "knew that

the loan proposals it had been receiving from Petters were fraudulent," (id. ¶ 37), GECC assisted Petters in furtherance of his scheme by permitting Petters to defraud "others whose money would be used to repay GECC," (id. ¶ 38).  Greenpond claims that Petters took "affirmative steps to further Petters' fraud, including submitting a false confirmation letter to Petters' auditors, in exchange for being paid in full on account of its credit facilities from what GECC must have known were the proceeds of further fraud enacted by Petters."  (See Pl.'s Mem. at 5–6 [Doc. No. 26].)

Once GECC was paid in full by Petters, Acorn loaned Petters and his affiliates $75 million, which was later increased to $300 million, "after relying upon, among other things, GECC's actions in furtherance of Petters' fraud."  (See id.)  Acorn, and its affiliates and investors, suffered losses in excess of $141 million, as a result of their dealings with Petters.  (See Compl. ¶ 80 [Doc. No. 1-1].)  As noted above, Greenpond is Acorn's successor-in-interest.  Thus, Plaintiff's claims against GECC are based on the alleged financial loss that Acorn incurred.

**D. Procedural Posture**

Greenpond filed suit against GECC in the Fourth Judicial District Court, County of Hennepin, State of Minnesota on April 10, 2014.  (See Compl. at 27 [Doc. No. 1-1].) Greenpond claims that GECC is liable for aiding and abetting fraud and conspiring to commit fraud with Petters.  (See generally id.)  On April 21, 2014, Defendant removed the case to federal court pursuant to 28 U.S.C. §§ 1334, 1446, and 1452.  (See Notice of Removal ¶¶ 1-2 [Doc. No. 1].)

5

GECC contends that the state court action [hereinafter, "State Action"] is "related to" the bankruptcy proceedings currently pending in Minnesota and Florida.  First, GECC argues that this case is "related to" the Petters Bankruptcy because "a recovery in [this State Action] by Greenpond . . . against GECC would reduce Greenpond's . . . claim in the Petters' Bankruptcy–thereby increasing the creditors' recoveries in those proceedings."  (Id. ¶ 9.)  Additionally, GECC argues that this case is "related to" the Palm Beach Bankruptcy because "an increased recovery to creditors in the Petters Bankruptcy also would result in increased recoveries to creditors in the Palm Beach Bankruptcy."  (Id.)

The same day that GECC filed its Notice of Removal, it also filed a motion seeking to have the State Action transferred to the United States District Court for the Southern District of Florida, so that the district court could refer the case to the Bankruptcy Court in the Southern District of Florida.  (See Def.'s Mot. to Transfer Venue at 1 [Doc. No. 3].)  Defendant also filed a supporting memorandum [Doc. No. 5] and several exhibits [Docs. No. 6-1–6-6].  Plaintiff filed a response on May 22, 2014 [Doc. No. 29].  On May 29, 2014, Defendant submitted a reply brief [Doc. No. 31], with two supporting exhibits [Doc. No. 31-1].

Plaintiff filed a Motion to Remand for lack of jurisdiction, or, in the alternative, for the Court to abstain pursuant to 28 U.S.C. §§ 1334(c)(1), (2), or equitably remand pursuant to 28 U.S.C. § 1452(b) [Doc. No. 24].  Greenpond also submitted a memorandum [Doc. No. 26], a declaration [Doc. No. 27], and several exhibits [Doc. No.

27-1–27-8].  Defendant filed a response brief on June 6, 2014 [Doc. No. 34], and Plaintiff submitted a reply on June 13, 2014 [Doc. No. 35].

### E.  Plaintiff's Theories for Remand

Plaintiff contends that remand is justified in this case for at least three reasons. First, Greenpond claims that its State Action is not "related to" the bankruptcy proceedings underway, and thus, this Court lacks jurisdiction.  (See Pl.'s Mem. at 11 [Doc. No. 26].)  Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil case[,] . . . to the district court for the district where such civil action is pending, if such district court had jurisdiction of such claim or cause of action under section 1334 of this title."  Section 1334, in turn, provides for several forms of federal bankruptcy jurisdiction, including cases that "relate to" a bankruptcy.  See 28 U.S.C. § 1334(b) (stating that district courts have original, but not exclusive jurisdiction of all civil proceedings "related to" cases under title 11).  Plaintiff argues that the State Action is not "related to" the bankruptcy proceedings, but is merely a "precursor" to additional actions that could be filed in bankruptcy court.  (See id.)  Defendant, however, contends that this case is related to the Petters' and Palm Beach Debtors' bankruptcy estates.  (See Def.'s Opp'n at 10–19 [Doc. No. 34].)

Second, Greenpond argues that remand is necessary because even if the State Action is related to the bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(c)(2), the court must abstain from hearing this case.  (See Pl.'s Mem. at 17–19 [Doc. No. 26].)  According to 28 U.S.C. § 1334(c)(2), a court must abstain from hearing an action if:

(1) a party to the proceeding files a timely motion to abstain; (2) the proceeding is based upon a state law claim or cause of action; (3) the proceeding is a related (non-core) proceeding; (4) absent § 1334(b), the cause of action could not have been commenced in a federal court; (5) the proceeding is commenced in state court; and (6) the action can be timely adjudicated in a state forum.

Ritchie Capital Mgmt., L.L.C. v. Opportunity Fin., L.L.C., 511 B.R. 603, 607–08 (D. Minn. 2014).  Greenpond argues that although it does not believe that the State Action is "related to" the bankruptcy proceedings, it notes, *arguendo*, that even if the Court finds that this action is "related to" the bankruptcy proceedings, the six-factor mandatory abstention test is satisfied, and the Court must remand the case to state court.  In contrast, Defendant claims that the final element of the mandatory abstention test is not satisfied in this case, as the state forum cannot timely adjudicate the action.  (See Def.'s Opp'n at 19–24 [Doc. No. 34].)

Third, and finally, Greenpond contends that even if abstention is not mandated, the Court should exercise its discretion and abstain under 28 U.S.C. § 1334(c)(1), because it is "in the interest of justice, or in the interest of comity with State courts or respect for State law."  (See Pl.'s Mem. at 21–23 [Doc. No. 26].)  Defendant argues that neither discretionary abstention, nor equitable remand, is appropriate in this case.  (See Def.'s Opp'n at 24–26 [Doc. No. 34].)

## III.   DISCUSSION

### A.  Standard of Review

Plaintiff moves to remand this case to state court pursuant to 28 U.S.C. § 1334(c)(1), (2) and § 1452(b).  Federal courts have original, but non-exclusive,

jurisdiction over bankruptcy cases for "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); <u>Specialty Mills, Inc. v. Citizens State Bank</u>, 51 F.3d 770, 773 (8th Cir. 1995). A proceeding is "related to" a title 11 case, for purposes of jurisdiction, if the outcome could "conceivably have any effect" on the estate that the bankruptcy court is administering. <u>See</u> <u>Buffets, Inc. v. Leischow</u>, 732 F.3d 889, 894 (8th Cir. 2013) (citing <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Titan Energy, Inc.</u>, 837 F.2d 325, 330 (8th Cir. 1988)).

As noted above, pursuant to 28 U.S.C. § 1334(c)(2), a court must abstain from hearing an action that is "related to" a bankruptcy proceeding if five additional factors are satisfied. <u>See</u> <u>Ritchie</u>, 511 B.R. at 607-08. One of those factors is timely adjudication in the state forum. <u>See also</u> <u>Minnesota Life Ins. Co. v. Credit Suisse First Boston Mortgage Sec. Corp.</u>, No. 12-cv-02671 (ADM/LIB), 2013 WL 704459, at *2 (D. Minn. Feb. 26, 2013); <u>Buffets, Inc. v. LGI Energy Solutions, Inc.</u>, No. 09-cv-548 (DSD/JJK), 2009 WL 2929436, at *4 (D. Minn. Sept. 8, 2009).

Even if mandatory abstention is not required, a court may exercise its broad discretion to abstain from hearing the action if it is "in the interest of justice, or in the interest of comity with State courts or respect for State law," under 28 U.S.C. § 1334(c)(1). Similarly, according to 28 U.S.C. § 1452(b), a court may remand a case "on any equitable ground." If a court remands pursuant to § 1452(b), the decision to remand "is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title." <u>See</u> 28 U.S.C. § 1452(b).

District courts are required to resolve any ambiguity as to whether removal is proper in favor of state court jurisdiction, and "removal jurisdiction must be narrowly construed in favor of the nonmoving party." Arnold Crossroads, LLC v. Gander Mountain Co., 751 F.3d 935, 940 (8th Cir. 2014) (citing In re Business Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993)).  Critically, the party seeking removal must establish federal subject matter jurisdiction, Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002); and the Court must resolve all doubts about federal jurisdiction in favor of remand, Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 968 (8th Cir. 2007).  A court determines whether a case is properly remanded to state court based on the plaintiff's "well-pleaded complaint."  Merrell Dow Pharm. v. Thompson, 478 U.S. 804, 808 (1986).

Here, the parties dispute whether: (1) the case is "related to" the Palm Beach Bankruptcy or the Petters' Bankruptcy proceedings; (2) mandatory abstention applies; and (3) the Court should exercise discretionary abstention, or remand because of equitable reasons.

**B.  "Related To" Jurisdiction**

Federal courts have jurisdiction over cases "related to" title 11 bankruptcy proceedings, if the outcome of the "related to" case could "conceivably have any effect" on the estate that the bankruptcy court is administering.  See Buffets, Inc., 732 F.3d at 894 (citing Nat'l Union Fire Ins. Co. of Pittsburgh, 837 F.2d at 330).  However, in order for "related to" jurisdiction to lie, the allegedly related lawsuit must conceivably affect the bankruptcy proceeding without the intervention of another lawsuit.  See Nat'l City

Bank v. Coopers and Lybrand, 802 F.2d 990, 993–94 (8th Cir. 1986) (affirming the district court's holding that the present action is, at most, a precursor to a future indemnification action).

Greenpond contends that this case has no cognizable impact on the Petters' bankruptcy estate for at least four independent reasons.  (See Pl.'s Mem. at 10 [Doc. No. 26].) [1]  Below, the Court disagrees with each of Greenpond's arguments, and finds that "related to" jurisdiction exists in this case.

---

[1]     Plaintiff focuses solely on the effect this lawsuit could have on the Petters estate, as opposed to the Palm Beach Bankruptcy estate.  For the reasons set forth below, the Court agrees with Plaintiff that the Palm Beach Bankruptcy estate would likely not be affected by the outcome of this case.

Generally, once a bankruptcy debtor's reorganization plan has been confirmed, "the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist."  In re D & P Partnership, 91 F.3d 1072, 1074 (8th Cir. 1996).  "Nevertheless, even after the confirmation of a debtor's plan, 'a bankruptcy court may explicitly retain jurisdiction [by stating so in the order confirming the plan] over aspects of a plan related to its administration and interpretation.'"  In re Fairfield Cmtys., Inc., 142 F.3d 1093, 1095 (8th Cir. 1998) (citing In re D & P Partnership, 91 F.3d at 1074).

Here, the Bankruptcy Court stated in the order confirming the Palm Beach Debtors' plan that it retained jurisdiction over cases involving the enforcement of the plan.  Paragraph 34 of the Florida Bankruptcy Court's order states that additional proceedings may be instituted "in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan . . . so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan."  See In re Palm Beach Finance Partners, L.P., Case No. 09-36379 (BKC/PGH), "Order Confirming Second Amended Joint Plan Of Liquidation" ¶ 34 (Bankr. S.D. Fla. Oct. 21, 2010).  While Plaintiff offered evidence demonstrating that the Palm Beach Bankruptcy has a confirmation plan, no evidence was offered demonstrating that the Petters Bankruptcy is also subject to a confirmation plan.

Therefore, insofar as Defendant argues that this case could potentially limit the size of the claims in the Palm Beach Bankruptcy (see Def.'s Opp'n at 18–19 [Doc. No. 34]), the Court disagrees.  The Florida Bankruptcy Court no longer has jurisdiction over aspects of the plan that would adversely affect the treatment of claim holders under the confirmation plan.  Accordingly, if Greenpond's success in this suit would limit a claim it could assert in the Palm Beach Bankruptcy proceeding, the Florida Bankruptcy Court no

First, Plaintiff argues that this case is not "related to" the Petters' Bankruptcy because the State Action is at best a "precursor" to a subsequent reconsideration action. (Id. at 11.)  Greenpond believes that in order to reduce its claim in the Petters' Bankruptcy, a party must first request "reconsideration," under 11 U.S.C. § 502(j). According to 11 U.S.C. § 502(j), "[a] claim that has been allowed or disallowed may be reconsidered for cause."  Thus, Greenpond contends that this present action is merely a precursor to a subsequent motion for reconsideration that would need to be filed in the Petters Bankruptcy case.

Defendant contends that a motion for reconsideration of Greenpond's claim is not necessary to affect the administration of the bankruptcy estate.  (See Def.'s Opp'n at 11 [Doc. No. 34].)  The Court agrees.  As the United States Court of Appeals for the Eighth Circuit explained in In re Kirwan, a bankruptcy court "need not wait for a formal motion and may reconsider a claim [pursuant to 11 U.S.C. § 502(j)] sua sponte."  164 F.3d 1175, 1177 (8th Cir. 1999) (citing In re Yagow, 62 B.R. 73, 78 (Bankr. D.N.D. 1986)). Therefore, Plaintiff's first argument fails, specifically as it applies to Petters' bankruptcy estate.

Second, Greenpond argues that "related to" jurisdiction does not exist in this case because the putative impact of a bankruptcy court reconsidering GECC's claim under § 502(j) is too speculative.  (See Pl.'s Mem. at 18 [Doc. No. 26].)  Greenpond cites the Eighth Circuit principle that reconsideration under the Bankruptcy Code "is discretionary

longer has jurisdiction over such a claim; and thus, this lawsuit is not sufficiently related to the Palm Beach Debtors Bankruptcy.

with the bankruptcy court."  In re W.F. Hurley, Inc., 612 F.2d 392, 395 (8th Cir. 1980).

Given the bankruptcy court's discretion, Plaintiff cannot imagine that the Minnesota

Bankruptcy Court would reduce Greenpond's recovery from the Petters estate if it were

to succeed in this action.  (See Pl.'s Mem. at 14 [Doc. No. 26].)  In opposition, Defendant

contends that "Greenpond's assertions that such effects are too speculative or theoretical

are not supported by the case law and should be disregarded."  (See Def.'s Opp'n at 17

[Doc. No. 34].)  The Court agrees.

       As the Eighth Circuit explained in In re Titan Energy, Inc., 837 F.2d 325 (8th Cir.

1988), and re-articulated in In re Farmland Indus., Inc., "'even a proceeding which

portends a mere contingent or tangential effect on a debtor's estate meets the broad

jurisdictional test [required for "related to" jurisdiction].'"  In re Farmland Indus., Inc.,

296 B.R. 793, 804–05 (8th Cir. 2003) (quoting In re Titan Energy, 837 F.2d at 330

(holding that a coverage dispute between the debtor's insurance company and a creditor

was "related to" the bankruptcy because a finding of coverage would reduce the claims

against the estate)); see also In re NWFX, Inc., 881 F.2d 530, 533 (8th Cir. 1989) (finding

"related to" jurisdiction over a breach of contract action involving a debtor's creditors

and a third party because the outcome could affect the amount and enforceability of the

creditors' claims against the bankruptcy estate).  Therefore, even though the bankruptcy

court maintains discretion about whether to reconsider Greenpond's claim in the Petters

Bankruptcy proceeding, the Court finds that the conceivable chance that the court will

choose to exercise that discretion is sufficient for meeting the broad jurisdictional test for

"related to" jurisdiction.

Third, Greenpond asserts that even if success against GECC in the State Action would reduce Greenpond's claim in the Petters Bankruptcy, the putative impact on the bankruptcy would be so remote, it is immaterial.  (See Pl.'s Mem. at 15 [Doc. No. 26].)  GECC argues that Greenpond's recovery would not be immaterial.  (See Def.'s Opp'n at 18 [Doc. No. 34].)  Specifically, Defendant explains that because Greenpond has alleged damages of approximately $141 million, that amount is not immaterial.  (See id.)  Again, the Court agrees with Defendant.  Not only is the amount sought by Plaintiff not immaterial, but even if the amount was less, a mere "tangential effect on a debtor's estate" satisfies "related to" jurisdiction.  See In re Farmland Indus., Inc., 296 B.R. at 804–05.

Plaintiff cites In re Exide Technologies, 544 F.3d 196 (3d Cir. 2008), to bolster its argument.  (See Pl.'s Mem. at 16 [Doc. No. 26].)  Greenpond claims that the In re Exide Technologies Court doubted "related to" jurisdiction existed over a $9.9 million claim against a debtor, which had over $4.4 billion in claims pending, because according to the Third Circuit, "[t]he size of the claims, relative to the total bankruptcy estate, may be a consideration in evaluating 'related to' jurisdiction."  (See id.)  Although this may be the rule in the Third Circuit, this Court is bound by precedent in the Eighth Circuit, and the Eighth Circuit has clearly stated that "related to" jurisdiction exists even if the effect on the debtor's estate is minor, or "tangential."  In re Farmland Indus., Inc., 296 B.R. at 804–05.  Accordingly, Greenpond's third argument challenging "related to" jurisdiction also fails.

14

Finally, Greenpond presents a parade of horribles and argues that if the Court finds that "related to" jurisdiction exists in this case, then "[a]ny outer limits upon the jurisdiction of federal bankruptcy courts would cease to exist."  (See Pl.'s Mem. at 17 [Doc. No. 26].)  Again, the Court disagrees and finds that the contours of "related to" jurisdiction set out by the Eighth Circuit sufficiently bound the federal court's jurisdiction.

In sum, based on the reasons stated above, the Court holds that this case is likely sufficiently "related to" the Petters Bankruptcy proceeding.  Because the Court finds that "related to" jurisdiction exists, the Court proceeds by engaging with Plaintiff's mandatory abstention argument.

### C. Mandatory Abstention

As explained above, the Court must abstain from hearing a case that is "related to" a bankruptcy proceeding if the six-factor test is satisfied.  See Ritchie Capital Mgmt., L.L.C. v. Opportunity Finance, L.L.C., 511 B.R. 603 607–08 (D. Minn. 2014). Defendant does not contest five of the factors of the mandatory abstention test.  Rather, GECC only disputes that a state forum can timely adjudicate the proceeding.  (See Def.'s Opp'n at 19-24 [Doc. No. 34].)  Accordingly, the Court addresses this contested issue below.

Plaintiff presents evidence that demonstrates the Fourth Judicial District's timeliness in adjudicating cases.[2]  The Minnesota Judicial Branch publishes an annual report that sets forth several independent measures of the timeliness and efficiency of the districts within the Minnesota state courts, including (1) the clearance rate, (2) the time to disposition, and (3) the backlog index.  (See Finestone Decl., Ex. D "Annual Report" at 21 [Doc. No. 27-4].)  The charts and data within the annual report subdivide civil cases brought before the state courts into major and minor civil cases.  (See generally id.)  Although the annual report does not define "major civil case," the Court assumes that lengthy, or more complicated civil matters are categorized as major civil cases.  Given the complexity of this case, the Court agrees with Plaintiff that this action is properly characterized as a "major civil case."  (See Pl.'s Mem. at 19–21 [Doc. No. 26].)

A state district court's clearance rate demonstrates whether a court is "'keeping up' with cases filed."  (Id. at 7.)  If the clearance rate is 100%, then the district court is considered up to date on all of its cases.  (See id.)  The most recently published annual report, which tracks data from 2012, does not explicitly set forth the clearance rate for major civil cases in Fourth Judicial District.  (See id. at 33, Figure 2.17; Finestone Decl., Ex. E "2012 Community Report" at 35 [Doc. No. 27-6].)  Nonetheless, Plaintiff calculated this rate based on the data provided within the report.  (See Pl.'s Mem. at 20 [Doc. No. 26].)  Plaintiff contends that, in 2012, the Fourth Judicial District had a clearance rate of 104.7% for all major civil cases.  (See id.)  Defendant does not appear to

---

[2]      This case was originally filed in the Fourth Judicial District in the State of Minnesota.  (See Compl. at 27 [Doc. No. 1-1].)  Therefore, the Court proceeds by discussing data solely from the Fourth Judicial District.

disagree with Plaintiff's calculation.  (See Def.'s Opp'n at 21-24 [Doc. No. 34].)  A

104.7% clearance rate indicates that the Fourth Judicial District disposes of cases faster

than new cases are filed.  (See Pl.'s Mem. at 20 [Doc. No. 26].)

A state district court's time to disposition, "[a]ssesses the length of time it takes to

process cases compared to the Judicial Council objectives for timely case processing."

(See Annual Report at 7.)  The annual report indicates that, in 2012, the Fourth Judicial

District disposed of 93.9% of all major civil cases within twelve months, 98.6% of all

major civil cases within eighteen months, and 99.4% of all major civil cases within

twenty-four months.  (Id. at 25.)

Finally, the backlog index value "represents the part of a year it took to dispose of

the cases pending at the beginning of the year if no new cases were filed and provides

information about a court's ability to 'keep up' with old cases."  (Id. at 7.)  The annual

report explains that civil cases should have a backlog index of 1.0 or lower.  (See id.)  A

1.0 value indicates that a court took one full year to dispose of pending cases, if no new

cases were filed.  In 2012, the backlog index value for major civil cases in the Fourth

Judicial District was only 0.37.  (Id. at 65.)  This value indicates that it took slightly more

than a third of a year for the court to dispose of pending cases, if no new cases were filed.

Plaintiff contends that these metrics demonstrate that the State Action could be timely

adjudicated in state court.  (See Pl.'s Mem. at 19-21 [Doc. No. 26].)

GECC claims that the state court could not timely adjudicate this case for three

reasons.  First, Defendant argues that the doctrine of collateral estoppel could possibly

prevent timely adjudication.  (See id. at 20.)  Specifically, GECC contends that "[i]f the

Palm Beach Litigation were to go to trial next spring and a jury were to find that GECC conspired with Petters to commit fraud, Greenpond no doubt would argue that the Minnesota state court was bound by that determination."  (Id.)  Second, Defendant claims that the Florida Bankruptcy Court would be able to adjudicate the action more quickly than the Minnesota state court.  (Id. at 21.)  Finally, GECC argues that although Plaintiff presents statistics pertaining to the timeliness of adjudicating "major civil" cases in Minnesota state courts, this action is more complicated than the regular civil case.  (Id. at 24.)  The Court addresses each of these three arguments, in turn, below.

### 1. Possibility of Collateral Estoppel

First, Defendant asserts that the mere possibility of collateral estoppel would prevent timely adjudication in state court.  The Court disagrees.  Defense counsel stated during oral argument that the threat of "collateral estoppel is a real and potential risk." (Hr'g Tr. 22:9-10 [Doc. No. 43].)  As an initial matter, the Court notes that mere "risk" is not enough for the Court to determine that Plaintiff is collaterally estopped from bringing this action.  Moreover, "[the sixth] factor [of the mandatory abstention test] does not involve consideration of whether the case may or may not be more quickly resolved out of State Court, as Defendant[] argue[s]."  Ritchie, 511 B.R. at 609.  Given that the timely adjudication factor does not depend on other court proceedings, the Court finds that the possibility that the Palm Beach Litigation may be resolved first, is irrelevant to the Court's inquiry.

Defendant cites CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC, 396 B.R. 602 (S.D.N.Y. 2008) to support its claim that collateral estoppel

precludes the state court from timely adjudicating this case.  In CCM Pathfinder, the New

York district court held that mandatory abstention did not apply because the state court

could not timely adjudicate the case given that "a proposed class action settlement [in

federal district court] could significantly impact the instant actions."  See CCM

Pathfinder, 396 B.R. at 606–07 (emphasis added).  Although the court bolstered its

holding by noting that the plaintiff had "fail[ed] to offer any concrete evidence to support

its bald assertion that the instant actions 'can and will be timely adjudicated in State

Court,'" id., the primary basis for its holding was the impact that the still-pending

settlement in federal district court would have on the state court proceeding.

     The Court finds Defendant's reliance on this case unavailing.  First, CCM

Pathfinder is not controlling.  Moreover, the CCM Pathfinder Court engaged in an

analysis that was not solely based on concrete evidence about the state court's rate of

timely adjudication.  See id.  Thus, the Court respectfully disagrees with the contours of

the CCM Pathfinder Court's analysis.  As explained in more detail infra, the relevant

inquiry for the court's "timely adjudication" analysis does not depend on whether another

court will resolve a factually similar case faster.  Rather, a court must limit itself to

determining only whether the state court is capable of timely adjudication.  Given these

parameters, the Court concludes that the data Plaintiff presented sufficiently demonstrates

that the state court could adjudicate the matter timely.

     In addition to Defendant's explicit collateral estoppel argument, the Court reads

GECC's collateral estoppel claim as alluding to the applicability of the automatic

bankruptcy stay.  For the reasons set forth below, the Court finds that the automatic stay

detailed in 11 U.S.C. § 362 does not apply to this case, at this time.  Pursuant to 11

U.S.C. § 362, once a bankruptcy proceeding against a debtor commences, an automatic

stay issues pertaining to "the commencement or continuation, including the issuance or

employment of process, of a judicial, administrative, or other action or proceeding

against the debtor that was or could have been commenced before the commencement of

the case under this title, or to recover a claim against the debtor that arose before the

commencement of the case under this title."  See 11 U.S.C. § 362(a)(1) (emphasis

added).  As applied to this case, "the debtor" is Petters and/or the Palm Beach Debtors. [3]

Therefore, this lawsuit does not involve a proceeding brought against the debtor.

---

[3]     The Court earlier found, *supra* note 1, that the Florida Bankruptcy Court no longer
retained jurisdiction over this lawsuit for purposes of Defendant's argument that this case
is "related to" the Palm Beach Debtors Bankruptcy, because the outcome of this case
could potentially limit the size of the claims in the Palm Beach Bankruptcy.  (See Def.'s
Opp'n at 18–19 [Doc. No. 34].)  This is because, generally, a bankruptcy court's
jurisdiction over a debtor's reorganization plan ceases to exist once the plan has been
confirmed.  See In re D & P Partnership, 91 F.3d at 1074.
        However, a bankruptcy court retains jurisdiction, even post-confirmation, "over
aspects of a plan related to its administration and interpretation."  See In re Fairfield
Cmtys., Inc., 142 F.3d at 1095.  Here, the automatic bankruptcy stay relates to the
administration of the Palm Beach Debtors' chapter 11 plan.  Moreover, "while the estate
of the debtor may no longer exist following plan confirmation, the debtor remains a
debtor until the title 11 case has been closed pursuant to 11 U.S.C. § 350(a)."  See NVF
Co. v. New Castle County, 276 B.R. 340, 348 (D. Del. 2002) aff'd, 61 F. App'x 778 (3d
Cir. 2003).  Accordingly, the Court finds that the Palm Beach Debtors Bankruptcy serves
as a relevant proceeding for the Court to examine when determining which "debtor" is
relevant for purposes of the applicability of the automatic bankruptcy stay.
        In fact, in the Florida Bankruptcy Court's order confirming the chapter 11 plan,
the court noted that all stays pursuant to 11 U.S.C. § 362 "shall remain in full force."  See
In re Palm Beach Finance Partners, L.P., Case No. 09-36379 (BKC/PGH), "Order
Confirming Second Amended Joint Plan Of Liquidation" ¶ 31 (Bankr. S.D. Fla. Oct. 21,
2010).  Of course, paragraph 31 of the order "cannot and does not confer jurisdiction
upon the court, as only Congress may do that."  See Harstad v. First Am. Bank, 39 F.3d
898, 902 n.7 (8th Cir. 1994).  Rather, the Court views this section of the order as "merely

However, the automatic bankruptcy stay may also apply to non-debtors. "The bankruptcy court can stay actions against any party, even a non-debtor, whenever the objective of the action is to obtain possession or exercise control over the debtor's property." Ritchie Capital Mgmt., L.L.C. v. Jeffries, 653 F.3d 755, 762 (8th Cir. 2011) (citing 11 U.S.C. § 362(a)(3)). The Eighth Circuit has held that "[t]he unusual circumstances in which the bankruptcy court can stay cases against non-debtors are rare." Id. (citing Reliant Energy Serv., Inc. v. Enron Canada Corp., 349 F.3d 816, 825 (5th Cir. 2003)). These unusual circumstances arise where "'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" Id. (citing McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 510 (3d Cir. 1997); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). According to the Eighth Circuit, "the automatic stay will apply to non-debtors only when 'a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.'" Id. at 763 (citing Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287–88 (2d Cir. 2003)).

Here, GECC, the non-debtor Defendant, does not share an identity with the Palm Beach Debtors or with Petters. None of these debtors indemnifies GECC. Cf. A.H. Robins Co., 788 F.2d at 999 (explaining that a stay under § 362(a)(1) may apply to a non-debtor where, for example, a third party is entitled to absolute indemnity by the debtor on

setting forth the understanding of the [parties], the court, and the creditors as to what actions would be brought in the bankruptcy court post-confirmation." See id.

the account).  Similarly, the parties have not presented facts demonstrating that GECC is

a guarantor or co-obligor for any of these debtors.  See McCartney, 106 F.3d at 509–10

(explaining that "[i]t is universally acknowledged that an automatic stay of proceedings

accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-

obligors, or others with a similar legal or factual nexus to the . . . debtor.").

Additionally, Greenpond's current action against GECC will not have an

immediate adverse economic consequence for the Palm Beach Debtors' estate or for

Petters' estate.  See Ritchie, 653 F.3d at 763.  The Court notes that "a creditor cannot

collect more, in total, than the amount it is owed."  Nuveen Mun. Trust ex rel. Nuveen

High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 295 (3d Cir.

2012) (citing Ivanhoe Bldg. & Loan Association v. Orr, 295 U.S. 243, 246 (1935)).

Accordingly, even if Greenpond succeeds in recovering from GECC and thus is not

entitled to subsequent recovery in other bankruptcy proceedings, the Petters' or Palm

Beach Debtors' estates will not necessarily be *adversely* affected.

As it relates to the Palm Beach Bankruptcy, no additional motions may be brought

that would "materially" alter the treatment of the claims in that case.  See In re Palm

Beach Finance Partners, L.P., Case No. 09-36379 (BKC/PGH), "Order Confirming

Second Amended Joint Plan Of Liquidation" ¶ 34 (Bankr. S.D. Fla. Oct. 21, 2010).

Therefore, the Palm Beach Debtors' estate cannot be adversely affected.  As it relates to

the Petters Bankruptcy, although Greenpond's success in this action could potentially

result in fewer creditors seeking to recover from the Petters' estate, fewer creditors

seeking relief does not amount to an adverse consequence for the estate.  If anything, the

consequence for the Petters' estate would be beneficial.  Accordingly, because the facts

do not demonstrate that GECC was in privity, in any respect, with the relevant debtors,

the Court finds that the automatic bankruptcy stay does not apply to this action.

For analogous reasons the Court finds that Defendant's reliance on In re Ames

Dept. Stores, Inc., No. 06-cv-5394 (BSJ/THK), 2008 WL 7542200 (S.D.N.Y. June 4,

2008), is misplaced.  In In re Ames, the New York district court held that mandatory

abstention did not apply because the state court could not timely adjudicate the case.  In

re Ames, 2008 WL 7542200, at *8.  The court explained that timely adjudication was

impossible because litigating the core of the dispute between the parties "would have

implicated the automatic stay [provision in § 1362]."  Id.  As an initial matter, the Court

notes that In re Ames is not controlling.  Moreover, the crux of the holding in In re Ames

was that the automatic bankruptcy stay would have precluded the state court from hearing

the case.  Id.  Here, however, as the Court explained above, the automatic bankruptcy

stay does not appear to apply to the merits of the case.  Thus, the automatic stay is not

implicated, and the In re Ames holding is inapposite.

The Court's automatic stay analysis is bolstered by the holding in Ritchie, a case

which involved a dispute between parties that is similar to this case.  See Ritchie, 511

B.R. at 606–07.  In Ritchie, one creditor of the Petters' estate brought suit against another

creditor, Opportunity Finance, LLC, alleging that the defendant was liable for conspiracy

and fraud.  See id.  The defendant removed the case to federal court and the plaintiff filed

a motion to remand.  Id.  Before the case was initially filed in state court, the Trustee for

all of Petters' debtors had commenced a number of proceedings in the Bankruptcy Court

in the District of Minnesota, including one proceeding against the defendant in Ritchie, Opportunity Finance. See id. at 607. The Ritchie Court explained that "the Bankruptcy Court [had earlier] denied, without prejudice, a motion brought by the Trustee seeking a declaration that this action violates the automatic bankruptcy stay and seeking an injunction against Plaintiffs' suit pending resolution of [the] Trustee['s] claims against Defendants." Id.

When denying the Trustee's motion that the District Court action violated the automatic stay provision in 11 U.S.C. § 362, the Bankruptcy Court articulated at least two justifications for its denial. First, it explained that "the issue of forum that is before the district court has to be addressed [first]." See Ritchie, No. 13-cv-2803, 12/10/13 Bankr. Hr'g Tr. 49:16-19 [Doc. No. 39-4]. Second, the court also explained that the District Court proceeding was not brought "against the debtor," as required by 11 U.S.C. § 362. Specifically, the Bankruptcy Court explained that "the [T]rustee is not the named party" in the District Court action, id. at 49, and although both the Trustee and the plaintiff in the District Court action were seeking to "grab money from" Opportunity Finance, and thus, the money "would come out of the same coffers," this did not mean that "Opportunity Finance's coffers [were] currently . . . property of the estate," id. at 54. As a result of the Bankruptcy Court's ruling pertaining to the inapplicability of the automatic stay, the District Court analyzed the merits of the plaintiff's mandatory abstention argument, abstained, and remanded the case to state court. See Ritchie, 511 B.R. at 611.

Similarly, in this case, the automatic stay does not apply for two reasons. First, GECC is not the relevant debtor. According to the Court's analysis above, Defendant

does not share an identity with Petters or the Palm Beach Debtors.  See supra at 15–16.

Rather, Plaintiff and Defendant are both creditors.  Second, although Greenpond and the

Palm Beach Debtors are both seeking reimbursement from GECC, this does not mean

that GECC's funds are currently property of the Palm Beach Debtors' or Petters' estates.

Thus, the Court determines that 11 U.S.C. § 362 does not clearly apply to this case, and

an automatic stay need not issue.  Furthermore, the Court notes that, unlike the defendant

in Ritchie, neither Defendant, nor any other party, brought a motion in Florida's

Bankruptcy Court seeking a declaration that the State Action or the current District Court

action violates the automatic bankruptcy stay.  Therefore, the Court concludes that the

automatic bankruptcy stay is inapplicable, and issues of collateral estoppel do not

preclude the Court from addressing the merits of Plaintiff's Motion to Remand.

### 2.   Relevant Comparative Analysis

GECC contends that adjudication in state court would also be untimely because

the Florida Bankruptcy Court would be able to adjudicate the action more quickly than

the Minnesota state court.  (See Def.'s Opp'n at 21 [Doc. No. 34].)  The Court finds that

GECC misstates the relevant guide posts for the Court's analysis.  As noted above, the

timely adjudication inquiry "does not involve consideration of whether the case may or

may not be more quickly resolved out of State Court, as Defendant[] argue[s]."  Ritchie,

511 B.R. at 609; see also In re Exide Technologies, 544 F.3d 196, 218 n.14 (3d Cir.

2008) (explaining that "[t]he question is not whether the action would be more quickly

adjudicated in the bankruptcy court than in state court, but rather, whether the action can

be timely adjudicated in the state court.").  Rather, the Court must address whether the

proceeding may be "timely adjudicated" in state court.  Id.  According to 28 U.S.C. § 1334(c)(2), the Court must analyze whether the State Action "can be timely adjudicated, in a State forum of appropriate jurisdiction."  As Plaintiff aptly explains, "the plain language of the statute focuses solely on the State Court's ability to timely adjudicate the case."  (See Pl.'s Reply at 13 [Doc. No. 35].)

Defendant claims that this Court should not be guided by Ritchie and In re Exide Technologies, because both courts misstated the relevant analysis for the timely adjudication inquiry.  (07/11/14 Hr'g Tr. 18-19 [Doc. No. 43].)  During oral argument, GECC's counsel explained that both Ritchie and In re Exide Technologies rely on the holding in In re Trans World Airlines, Inc., 278 B.R. 42 (D. Del. 2002).  (See id.)  When analyzing the timely adjudication factor for mandatory abstention, in In re Trans World Airlines, Inc., the Bankruptcy Judge provided a detailed comparative analysis which addressed whether the federal court or the state could more timely adjudicate the matter. See In re Trans World Airlines, Inc., 278 B.R. at 51.  At the conclusion of this analysis, the Bankruptcy Judge stated, "[i]n addition, the issue under § 1334(c)(2) is not whether the action would be more quickly adjudicated in this Court than in the state court, but rather, whether the action can be timely adjudicated in the state court."  Id. (emphasis original).  The Court finds that this conclusory note should have served as the primary guide for the court's inquiry.  Relatedly, the Court finds that the In re Trans World Airlines, Inc. Court undertook an unnecessary comparative analysis.  As explained above, the plain language of § 1334(c)(2) dictates that the Court's analysis must be solely limited to whether the state action "can be timely adjudicated, in a State forum of

appropriate jurisdiction," as opposed to a broader comparative analysis.  Therefore, the

Court disagrees with Defendant's contention that the <u>Ritchie</u> Court erroneously stated the

relevant inquiry for timely adjudication.

### 3.  Insufficiency of Concrete Evidence

Finally, Defendant argues that adjudication in state court would not be timely

because the statistics that Plaintiff provided are irrelevant since this case is more

complicated than a regular civil case.  (<u>See</u> Def.'s Opp'n at 24 [Doc. No. 34].)  The Court

disagrees.  This Court has previously held that similar evidence about clearance rates was

sufficient to satisfy the movant's burden concerning timely adjudication.  <u>See</u> <u>Ritchie</u>,

511 B.R. at 609 (finding that adjudication in state court would be timely based on

clearance rate data); <u>Minnesota Life Ins. Co. v. Credit Suisse First Boston Mortgage</u>

<u>Secs. Corp.</u>, No. 12-cv-02671 (ADM/LIB), 2013 WL 704459, at *4 (D. Minn. Feb. 26,

2013) (holding that adjudication in state court would be timely based on clearance rate,

time to disposition, and age of pending cases data).

In fact, in <u>Minnesota Life</u> a court in this District rejected an argument that was

analogous to GECC's.  <u>See</u> <u>Minnesota Life</u>, 2013 WL 704459, at *3.  The defendants in

<u>Minnesota Life</u> argued that the case was "significantly larger and more complex than the

cases reflected in the statistics relied on by Plaintiffs," and the federal court was better

equipped to handle the case because of its familiarity with the case.  <u>Id.</u>  The <u>Minnesota</u>

<u>Life</u> Court held that mere "skepticism as to whether the case can be timely adjudicated in

state court cannot overcome the concrete evidence showing the [state court] is fully

capable of timely adjudicating complex cases."  <u>Id.</u> at *4.

Here, Plaintiff submitted evidence demonstrating that the Minnesota Fourth Judicial District disposes of civil cases with a 104.7% clearance rate for all major civil cases, 93.9% of all major civil cases are disposed of within twelve months, and it takes slightly more than a third of a year for the court to dispose of pending cases. (See Pl.'s Mem. at 20-21 [Doc. No. 26].)  The Court couples these persuasive statistics with the fact that it must give the state court "the deference of a presumption" that it timely adjudicates its cases. See In re Fifty Below Sales & Mktg., Inc., 490 B.R. 885, 897 (Bankr. D. Minn. 2013).  Accordingly, Defendant's contention that this case is more complicated than the average "major civil" case is unavailing.  GECC's skepticism cannot overcome the concrete evidence presented by Plaintiff.

The Court concludes that the state court is fully competent to handle this matter, and may do so in a timely manner with proper resources, as outlined by Plaintiff and as reflected in the annual report of the Minnesota state judiciary attached to Plaintiff's opening brief.  (See generally Annual Report [Doc. No. 27-4].)  Therefore, Plaintiff has met its burden of showing that the case may be timely adjudicated in a state forum, and all six elements of the mandatory abstention test are satisfied.

Because the Court finds that abstention is compulsory in this case, it need not address Plaintiff's arguments pertaining to discretionary abstention.

## IV.    CONCLUSION

Plaintiff sufficiently proved all six elements required for mandatory abstention, pursuant to 28 U.S.C. § 1334(c)(2).  Thus, the Court abstains from hearing this case.  As a result of its abstention, the Court hereby remands the proceeding to state court, pursuant

to its authority under 28 U.S.C. § 1452(b).  See In re Fifty Below Sales & Mktg., Inc.,

490 B.R. at 891, 898.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Plaintiff's Motion to Remand [Doc. No. 24] is **GRANTED**.

2.  Defendant's Motion to Transfer [Doc. No. 3] is **DENIED** as moot.

The proceedings are hereby **REMANDED** to the state court.


Dated: January 16, 2015                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Court Judge